STATE OF NORTH CAROLINA
v.
BARSHIM NATHANIEL KEENER
No. COA09-771.
Court of Appeals of North Carolina.
Filed: February 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Elizabeth Leonard McKay, for the State.
Greene & Wilson, P.A., by Thomas Reston Wilson, for Defendant-Appellant.
McGEE, Judge.
Robert McPhee (McPhee), a man in his mid-eighties who suffered from poor hearing and leg ailments, was assaulted in his home on the night of 22 August 2007, at approximately 9:30 p.m. Three individuals surprised McPhee while he was at his computer. They threatened McPhee with handguns, and stole money and personal items from McPhee's person and his house, including a key to McPhee's house. During the robbery, the assailants snatched McPhee's cane away from him and threw it across the room; dumped McPhee off of a chair onto the floor; threw the chair, breaking it; then pushed over a dresser with an attached mirror, pinning McPhee underneath, and causing the mirror to shatter. McPhee recovered a handgun from the dresser, fired one shot toward his living room, and managed to call his neighbor for help. Detective Brandon Wynne responded to the scene of the robbery and assault.
Detective Wynne received a report of a shooting around 1:00 a.m. on 23 August 2007, three and a half hours after the assault on McPhee. In response to this report, Detective Wynne went to Martin General Hospital where he interviewed Barshim Nathaniel Keener (Defendant), who had been shot in his right leg. During Detective Wynne's investigation of the shooting, he recovered a key from a pocket in Defendant's pants, which he later determined fit the locks on McPhee's house. Defendant gave conflicting statements concerning how he had been shot in the leg. Defendant was arrested and indicted for first-degree burglary and robbery with a dangerous weapon. Defendant was tried on 3 February 2009, and verdicts of guilty were returned by the jury on both charges. The trial court entered judgment on each charge sentencing Defendant to consecutive active terms of 80 to 105 months. Defendant appeals. Additional relevant facts will be addressed in the body of the opinion.

I.
In Defendant's first argument, he contends the trial court erred by failing to grant his motions to dismiss both charges at the close of all the evidence. We disagree.
"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted).
"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. `Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.' If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then `it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.'"
"Both competent and incompetent evidence must be considered." In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence. The defendant's evidence that does not conflict "may be used to explain or clarify the evidence offered by the State." When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence.
Id. at 596-97, 573 S.E.2d at 869 (internal citations omitted) (quotation marks omitted).
Defendant does not argue that the facts surrounding the events on the night of 22 August 2007 fail to satisfy all the elements of first-degree burglary or robbery with a dangerous weapon. Defendant only argues that the motions to dismiss these charges against him should have been granted because the evidence that he was one of the perpetrators was insufficient as a matter of law. Id. at 595, 573 S.E.2d at 868.
When viewed in the light most favorable to the State, the evidence at trial showed the following: McPhee hired Defendant to perform about four hours of yard work in June of 2007. McPhee asked Defendant his name during this period, which Defendant provided. Defendant returned a few days later asking for more work, but McPhee did not have any work for Defendant at that time. On 22 August 2007, at around 9:30 p.m., McPhee was playing a game on his computer and watching television. The television was on at a high volume because McPhee was hard of hearing. McPhee heard someone say "get on the floor," and McPhee then noticed three individuals in the room with him. All three appeared to be African American males, and all three were carrying handguns. One of the intruders was wearing a Halloween mask (the mask) and was pointing his gun at McPhee. The intruder wearing the mask demanded money from McPhee, and McPhee pulled out his wallet and gave it to the intruder wearing the mask. McPhee's wallet contained credit cards, about $100.00 in cash, and the key to McPhee's house. McPhee was then pushed to the floor, and a dresser was turned over on top of him. McPhee retrieved a handgun from the dresser and fired it once toward the living room. McPhee then called his neighbor, who came over and called 911. McPhee's house was "ransacked" and a number of items of personal property had been taken.
At approximately 1:00 a.m. on 23 August 2007, Detective Wynne received a call reporting an alleged shooting. Detective Wynne went to the site of the alleged shooting, but he could find no evidence that any shooting had taken place there. Detective Wynne then interviewed the victim of the shooting at Martin General Hospital. The victim of the shooting turned out to be Defendant. Defendant first told Detective Wynne that he was walking down Roberson Street when he heard three shots and was hit in his leg. Detective Wynne collected Defendant's pants as evidence, and he recovered a lighter and a key from one of the pants pockets. Defendant claimed the key was not his and he did not know where it came from.
Detective Wynne went to McPhee's residence later on 23 August 2007 and established that the key retrieved from Defendant's pants pocket opened the locks to the doors of McPhee's house. McPhee informed Detective Wynne that his house key had been taken during the armed robbery the night before.
Defendant was arrested and taken to the Williamston Police Department. While in custody, Defendant informed Mary Beddard, from Juvenile Justice and Delinquency Prevention, that he received the gunshot injury when a handgun accidentally discharged while Defendant was at a friend's house.
When viewed in the light most favorable to the State, there was substantial evidence presented at trial that Defendant committed the first-degree burglary and robbery with a dangerous weapon. McPhee testified that the individual in the mask took his wallet, which also contained McPhee's house key. McPhee fired his handgun in his house. Defendant went to the hospital several hours later with a gunshot wound and McPhee's house key in his pocket. Defendant gave conflicting stories about the circumstances surrounding his wound, first stating he was shot while walking down the street, then stating he was accidentally shot at a friend's house. Defendant knew McPhee and he had at least some familiarity with McPhee's house. Defendant knew that McPhee could recognize him, and the individual who took McPhee's wallet and house key was the only one wearing a mask.
We hold that the trial court did not err in denying Defendant's motions to dismiss at the close of all the evidence. This argument is without merit.

II.
In Defendant's third argument, he contends the trial court erred in failing to consolidate his sentences and in "failing to allow [him] to put on any evidence at sentencing." We disagree.
Trial courts have "considerable leeway and discretion in governing the conduct of a sentencing proceeding[.]" Indeed, "[a] judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." Generally, "[a] defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached[.]" N.C. Gen. Stat. § 15A-1443(a) (2005).
State v. Mead, 184 N.C. App. 306, 310, 646 S.E.2d 597, 600 (2007) (internal citations omitted).
Defendant first argues that the trial court abused its discretion in ruling that Defendant's two sentences shall run consecutively.
When multiple sentences of imprisonment are imposed on a person at the same time or when a term of imprisonment is imposed on a person who is already subject to an undischarged term of imprisonment, including a term of imprisonment in another jurisdiction, the sentences may run either concurrently or consecutively, as determined by the court.
N.C. Gen. Stat. § 15A-1354(a) (2007). Defendant was convicted of first-degree burglary and robbery with a firearm. Defendant cites to no relevant authority in support of his argument that the imposition of consecutive sentences in his case was improper. This subjects Defendant's argument to dismissal. N.C.R. App. P. 28(b)(6); Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008). Furthermore, nothing in Defendant's brief suggests the trial court's sentence in any manner constituted an "abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." Mead, 184 N.C. App. at 310, 646 S.E.2d at 600. This argument is without merit.

III.
Defendant next argues that the trial court erred in "failing to grant a continuance of the sentencing proceeding." Defendant moved the trial court to delay the sentencing hearing in order to give Defendant's mother an opportunity to attend. The trial court denied Defendant's motion to continue and conducted the sentencing hearing immediately following the guilt/innocence phase of the trial.
(a) Time of Hearing.  Unless the defendant waives the hearing, the court must hold a hearing on the sentence. Either the defendant or the State may, upon a showing which the judge determines to be good cause, obtain a continuance of the sentencing hearing.
(b) Proceeding at Hearing.  The defendant at the hearing may make a statement in his own behalf. The defendant and prosecutor may present witnesses and arguments on facts relevant to the sentencing decision and may cross-examine the other party's witnesses. No person other than the defendant, his counsel, the prosecutor, and one making a presentence report may comment to the court on sentencing unless called as a witness by the defendant, the prosecutor, or the court. Formal rules of evidence do not apply at the hearing.
N.C. Gen. Stat. § 15A-1334 (2007).
Upon being informed that the State wished to proceed with sentencing, Defendant's counsel asked to address the trial court. Defendant's counsel stated: "My client has indicated that his mother couldn't be here this afternoon and she would like to be present. There's something I believe she wants to say, something on his behalf." The State indicated that it wished to proceed, and the trial court denied Defendant's request to continue.
Defendant presents no authority in support of his argument that the trial court's denial of his request on these facts amounts to an abuse of discretion. This failure alone subjects Defendant's argument to dismissal. N.C.R. App. P. 28(b)(6); Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008). Furthermore, the statement of Defendant's counsel that "there's something I believe she wants to say, something on his behalf" provides this Court with nothing upon which to evaluate what potential effect the testimony of Defendant's mother might have had on sentencing. Defendant's counsel provided no indication to the trial court concerning what the content of the testimony of Defendant's mother might be. Defendant may not now, on appeal, speculate that the testimony of Defendant's mother would have provided substantial mitigating evidence. We therefore cannot find an abuse of discretion on the facts before us. This argument is without merit.
No error.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).